IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN D. GARRETT,<br><br>          Petitioner,<br><br>     v.<br><br>UNITED STATES,<br><br>          Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-27 (JBS)<br><br>[Cr. No. 11-242 (JBS)]<br><br>**OPINION** |

APPEARANCES:

Alan D. Garrett
63176050
FCI Butner
P.O. Box 1000
Butner, NC 27509
     Pro Se Petitioner

Matthew T. Smith, AUSA
Robert Stephen Stigall, AUSA
Office of the US Attorney
P.O. Box 2098
Camden, NJ 08101
     Attorneys for Respondent

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

Petitioner Alan D. Garrett pled guilty to 18 U.S.C. 922(g)(1), possession of a firearm by a convicted felon, and this Court sentenced him to 77 months imprisonment, the bottom of the Sentencing Guidelines range. He timely filed this habeas petition under 28 U.S.C. § 2255 arguing that his conviction was invalid because, <u>inter alia</u>, the Court lacked jurisdiction, he

was actually innocent, his counsel was ineffective, essential elements of the offense were missing, unlawfully obtained evidence was used, there were speedy trial act violations, and he was entitled to a downward departure. For the reasons discussed herein, the Court finds that Garrett waived his right to petition for § 2255 relief and that, in any event, none of his grounds have merit, and Garrett's petition will be denied.

## II.   BACKGROUND

### A. Factual Background

On August 20, 2010, at approximately 10:45 p.m., two Camden Police officers received information that shots were fired at the 3100 block of Westfield Avenue in Camden, New Jersey. (Def. Ex. A, Pre-Sentence Investigation Report ("PSR"), ¶ 10.) When the officers arrived at the 3100 block of Westfield Avenue, they saw a black male, later identified as Alan Garrett, leaning on a fence. (PSR ¶ 10.) Garrett walked away from the officers and began staggering and stumbling. (PSR ¶ 10.) The officers approached Garrett to determine if he had been injured in the shooting and ordered him to stop. (PSR ¶¶ 10-11.) Garrett ran away, and the officers tackled him. (PSR ¶ 11.) The firearm fell to the sidewalk and the officers retrieved it. (PSR ¶ 11.) The firearm was a Smith & Wesson .40 caliber pistol, bearing serial number MSE2992, loaded with seven bullets. (PSR ¶ 12.) Garrett, who appeared intoxicated, was arrested. (PSR ¶ 11.)

According to records from the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), the firearm was manufactured in Massachusetts. (PSR ¶ 13.)

### B. Procedural History

On February 1, 2011, Garrett was charged with being a felon in possession of a firearm. [Cr. No. 11-242, Docket Item 1.] He was arrested on February 7, 2011 and made an initial appearance before a U.S. Magistrate Judge on February 8, 2011. On February 8, 2011, an Assistant Federal Public Defender was appointed to represent him. [Cr. No. 11-242, Docket Item 7.] On February 8, 2011, the Magistrate Judge granted a joint application from both prosecution and defense counsel to continue and exclude time under the Speedy Trial Act from February 8, 2011 through April 8, 2011. [Cr. No. 11-242, Docket Item 11.] On April 13, 2011, a grand jury sitting in Camden returned a one-count indictment against Garrett for violating 18 U.S.C. § 922(g)(1), which prohibits anyone who has been convicted of a crime punishable by over one year of imprisonment from possessing a firearm in or affecting commerce. [Cr. No. 11-242, Docket Item 12.]

After four continuances, Garrett pleaded guilty on October 4, 2011. Garrett's plea agreement stipulated, inter alia, that "Garrett knows that he has and . . . voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18

U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 21." (Def. Ex. B at 8 ¶ 8.) Garrett attested that "[m]y attorney and I have discussed the letter and all of its provisions, including the provisions addressing the charges, sentencing, the stipulations, [and] waiver . . . consequences." (Id. at 6.)

Before accepting the guilty plea, the Court verified its factual basis. Garrett admitted under oath that he was at Westfield Ave. in Camden at 10:45 p.m. on August 20, 2010; that he possessed the Smith & Wesson .40 caliber pistol with serial number MSE2992; that he was holding the firearm in his waistband; that he knew he possessed the firearm; that he dropped the firearm on the sidewalk when the officers approached him; that, before August 20, 2010, he had been convicted of a crime punishable by over one year of imprisonment; that the firearm was operable; and that the firearm was manufactured in Massachusetts. (Def. Ex. C at 23:20-27:3.) Garrett also said he understood that he was relinquishing his right to seek post-conviction relief as long as his sentence was not greater than guidelines level 21. (Def. Ex. C at 28:7-25.)

4

Garrett was sentenced on January 26, 2012. The guideline range was 77 to 96 months based on a total offense level of 21 and a criminal history category of VI. (PSR ¶ 89.)

At the sentencing hearing, Garrett submitted a motion for a downward departure based on his mental and emotional conditions and diminished capacity noting, inter alia, that he had an impoverished childhood; left school in fifth grade because his family could not afford clothes for him; was raped at age 17; had been shot multiple times; suffers from bipolar depression and anxiety; and experiences poor sleep, paranoia, stress, mood swings, and headaches in prison. (Def. Ex. D at 4:23-7:20.) Garrett also explained that he was the eldest of 11 children, had no father, lacked education, and never had a driver's license. (Def. Ex. D at 10:9-12:11.) He also argued that his diminished capacity contributed to his commission of the offense because he was suffering from paranoia from having been shot three times and believed he needed the firearm for protection. (Def. Ex. D at 7:21-8:13.) He did not present any evidence, even after the Court specifically asked, that he suffered from delusions or being out of touch with reality. (Def. Ex. D. at 8:20-9:6.)

The government opposed the motion, noting, inter alia, that Garrett had obtained his GED, earned 18 college credits in business courses, and received a Pell Grant to attend Harris

School of Business for paralegal studies. (Def. Ex. D. at 12:16-13:17.) The government also argued that Garrett did not suffer from a significantly reduced mental capacity in the sense that he could not understand the wrongfulness of his behavior or could not control his behavior. (Def. Ex. D at 13:18-14:9.) Finally, the government noted that there was no correlation between the crime and his mental health impairment or diminished capacity and that Garrett was intoxicated at the time. (Def. Ex. D at 14:10-23.)

The Court issued an oral opinion denying Garrett's motion. The Court noted that Garrett had demonstrated good intellectual ability by obtaining a GED, completing 18 college credits, receiving the grant for paralegal studies, speaking articulately and with focus at the sentencing, and sending the Court submissions that showed impressive orientation, ability, and communication skills. (Def. Ex. D. at 14:25-17:6.) The Court concluded: "while Mr. Garrett suffers from a certain degree of mental illness, which is manifested by depression and anxiety and also by mood swings, that these features are not present to such an unusual degree that it would take his case outside of the Guidelines." (Def. Ex. D at 17:24-18:3.) The Court also held: "What's been diminished in Mr. Garrett's life unfortunately is his opportunity. . . . But he has not demonstrated that those burdens, as heavy as they may be, have

somehow deprived him of the ability to understand the wrongfulness of his behavior or to control behavior that he knows is wrong." (Def. Ex. D at 18:9-18:15.) Finally, the Court stated: "He was intoxicated in a dangerous neighborhood . . . and made a decision to carry the firearm and that decision was not the product of a diminished capacity. And so the mental health issues that Mr. Garrett has are going to be considered in the sentence, but individually or cumulatively they don't add up to a basis for a departure . . . ." (Def. Ex. D at 19:15-19-23.)

After the Court denied Garrett's motion for a downward departure, he was sentenced to 77 months of imprisonment, the bottom of the advisory Guidelines range of 77 to 96 months as determined by Total Offense Level 21 and Criminal History Category VI.

Garrett appealed to the Third Circuit arguing, inter alia, that his criminal history category had been improperly counted. The Third Circuit affirmed the judgment. United States v. Garrett, 507 F. App'x 139 (2012).

### C. Petitioner's Arguments

Garrett seeks vacation of his conviction, dismissal of the indictment, and/or a new plea agreement. [Docket Item 1 at 44.] He argues: "federal court is to refrain from interfering in a State Criminal Case"; "Removal of a state criminal or civil prosecution to federal court"; "violation of Fed. R. Crim. P.

48(b) and Speedy Trial Act 30-day limit"; "Incompetence of Counsel"; and "wrongfully obtained Evidence by State Officers for federal Conviction". [Docket Item 1 at 1.] Garrett submitted a "Supplement" asserting that the Court erred because "[t]he relation between the firearm and the underlying offense . . . is An essential element of the crime, and failure to instruct upon it warrants reversal." [Docket Item 5 at 1.][1]

Respondent United States opposes habeas relief because the waiver provision in the plea agreement bars Garrett's collateral attack and his arguments lack merit. [Docket Item 11.]

Garrett filed a reply [Docket Item 13], asserting that he was entitled to a downward departure due to his history of bipolar disorder and anxiety and that he was actually innocent. He also asserts that "Colorable Issues of Racial Profiling are present in this case" and the police lacked probable cause or reasonable suspicion to investigate, seize, arrest, and search him. [Docket Item 13 at 12.]

Garrett also filed motions for summary judgment [Docket Item 15] and to withdraw his guilty plea [Docket Item 17], which repeat his previous arguments.

---

[1] In response to the Court's order advising him of his rights under United States v. Miller, Garrett wrote that he "wish[es] to Proceed with any and All potential claims . . . without Refiling." [Docket Item 4 at 1.]

## III. STANDARD OF REVIEW

Motions pursuant to 28 U.S.C. § 2255 are the "means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). The statute provides: "A prisoner . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . ., or is otherwise subject to collateral attack, may move . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). If "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the petition shall be denied. 28 U.S.C. § 2255(b). The district court must "grant an evidentiary hearing when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief . . . ." United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005).

## IV. DISCUSSION

As explained below, all of Garrett's arguments lack merit, and his petition will be denied without an evidentiary hearing because (a) the record conclusively shows he is not entitled to relief, and (b) he knowingly and voluntarily waived his right to seek collateral review under § 2255 as part of his plea agreement.

9

**A. Jurisdiction**

Garrett argues that "States have an important interest in administering their criminal proceedings free from federal interference" and the "federal court is to refrain from interfering in a state criminal case over which it otherwise has jurisdiction." [Docket Item 1 at 35.] He argues that there was "an ongoing state judicial proceeding instituted prior to federal proceeding . . ." and that his criminal case was improperly removed to federal court. [Id. at 36-37 (emphasis in original).] He emphasized Supreme Court case law on "Avoid[ing] federal Intrusion into matters of local concern and which are within the special competence of the local courts." [Docket Item 13 at 7.]

These arguments challenge the Court's subject matter jurisdiction over Garrett's criminal case, and they lack merit. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Garrett was charged with violating a United States law, specifically 18 U.S.C. § 922(g)(1), and, therefore, the Court's jurisdiction was proper. See, e.g., United States v. Mueller, 405 F. App'x 648, 649 (3d Cir. 2010) (when defendant was charged under 18 U.S.C. § 922(g)(1), "[t]he District Court had subject matter jurisdiction . . . pursuant to 18 U.S.C. § 3231 because

the defendant was charged in an indictment with violations of federal criminal law"). Garrett's jurisdictional challenges fail.

### B. Actual Innocence

Garrett argues "actual innocence" because the unit dispatch, which sent officers to Westfield Ave. to address shots fired, referenced information about a "Black male" but did not give details about height, weight, age, attire, facial hair, or hairstyle. [Docket Item 13 at 12.] Garrett also stated that "Exculpatory Evidence known Late – mailed Late and Hearing Passed" and referenced a fingerprint examination of the firearm that was negative for latent prints. [Docket Item 13 at 9-11.] This claim is frivolous.

As noted above, Garrett was caught by police in possession of the firearm in question. He freely admitted, under oath in his Rule 11 colloquy with the Court, that he knowingly possessed this pistol in his waistband on August 20, 2010, and that he dropped it on the ground when the officers approached him. (Def. Ex. C at 23:30-27:3.) He admitted he had been previously convicted of a felony, that the firearm was operable, and that it was manufactured in Massachusetts and found its way to New Jersey where he knowingly possessed it. (Id.) That law enforcement was unable to lift any fingerprints from his own

admitted weapon is quite beside the point, given the ample admissions of his guilt.

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ . . . ." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995)). Garrett has not asserted that he was not at the 3100 block of Westfield Ave. on August 20, 2010, that he did not possess the Smith & Wesson firearm, or that he had not been previously convicted of an offense punishable by over one year of imprisonment. He admitted all of these facts at his plea hearing. The absence of latent fingerprints does not establish, in light of all the evidence including the police observations and Garrett's admissions, that no reasonable jury would have convicted him. In other words, he has not claimed and "has not provided evidence demonstrating that he is actually innocent of his offense of conviction . . . ." United States v. Craft, 514 F. App'x 91, 94 (3d Cir. 2013). This is not an extraordinary case in which the actual innocence exception applies.

12

### C. Waiver of Post-Conviction Relief

In his written plea agreement letter dated September 21, 2011 (Def. Ex. B at 4 and App. A thereto at ¶ 8), as well as in his oral plea colloquy with this Court on October 4, 2011 (Def. Ex. C at 26:4-31:6), Mr. Garrett knowingly and voluntarily waived his right to file the present motion under § 2255. At the October 4th hearing, Garrett indicated he read and understood, and fully discussed with his attorney Michael Huff, Esq., the conditional waiver of appeal and post-conviction relief in his plea agreement. (Id. at 27:4-29:4.) The waiver provision in ¶ 8 of his plea agreement states:

> Alan Garrett knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 21. This Office will not file any appeal, motion or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 21. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

(Def. Ex. B at 8 ¶ 8.)

The Court painstakingly questioned Mr. Garrett about his understanding of his waiver of the right to seek post-conviction relief under § 2255 (Def. Ex. C at 28:7-29:10), highlighting it separately from his waiver of the right to appeal. (Id. at 27:6-28:6). He understood that he had a right to seek post-conviction relief before the sentencing judge unless he gave up that right, and he understood such a motion asks the sentencing judge to review his conviction and sentencing on the ground that there is a violation of federal law or of the Constitution. (Id. at 28:7-18.) Most importantly, he understood he was choosing to give up that right as long as his sentence was not greater than Level 21 of the Sentencing Guidelines, which he had also discussed with counsel. (Id. at 28:19-25.) He swore it was his personal decision to give up the right to seek post-conviction relief as part of his negotiated plea agreement so long as his sentence ended up at Level 21 or less, and that Mr. Huff had explained to him what a Level 21 sentence means in his case. (Id. at 29:4-10.)

To assure that Mr. Garrett had a full knowledge and appreciation of his waiver, the Court even gave examples using the Guidelines table for Level 21 at various Criminal History Categories, including Level 21 and Criminal History Category VI, which yielded a recommended range of 77 to 96 months. (Id. at

14

30:10-23.) He understood these examples, including the fact that he was choosing to waive the right to post-conviction relief if his Criminal History Category was VI and his sentence was 96 months or less. (Id. at 30:15-23.) He explicitly acknowledged that it was his decision, as part of his negotiated plea agreement, to waive his rights to appeal and to seek post-conviction relief under the terms of ¶ 8 of his plea agreement stipulations. (Id. at 28:3-6.)

In the present matter, Mr. Garrett does not claim that his waiver was unknowing or involuntary or that he did not understand and accept what he was giving up, nor could he plausibly make such a claim on this record. As he was sentenced at Level 21, Criminal History Category VI, to the bottom end of the recommended 77 to 96 month Guideline range, the sentence he received satisfied the condition of his waiver.

In the context of waiver of collateral attack, the Court must consider the validity of the waiver, specifically examining (1) whether the waiver is knowing and voluntary based on what occurred and what the petitioner contends, and (2) whether enforcement would work a miscarriage of justice. United States v. Mabry, 536 F.3d 231, 236-37 (3d Cir. 2008). The Court may review the terms of the plea agreement and the plea colloquy, as it has done above in detail, to determine the knowing and

voluntary nature of the waiver. United States v. Gwinnett, 483 F.3d 200, 203-04 (3d Cir. 2007).

Regarding voluntariness, Mr. Garrett specifically swore, in answer to the Court's questions, that his decision to accept the plea agreement was his "personal decision" and not the product of any force or threats. (Def. Ex. C at 8:12-16, 9:3-5.) Nor does Garrett now claim that his decision to accept the plea agreement and its waiver provision was involuntary. His attorney, Mr. Huff, also confirmed that he had reviewed with Mr. Garrett his rights under Section 2255 to file a motion for post-conviction relief and the waiver thereof in ¶ 8 of the plea agreement stipulations and that he believed Garrett's waiver of Section 2255 relief was knowing and voluntary. (Id. at 5:23-6:5.)

Finally, Mr. Garrett's Section 2255 petition does not claim that enforcing his waiver of collateral attack would result in a miscarriage of justice, nor is this Court aware of any ground that could rise to that level in this petition.

Accordingly, the Court finds that Mr. Garrett has waived his right to file this petition, and that his wavier was knowing and voluntary and with the effective assistance of counsel, and that enforcement of the waiver would not work a miscarriage of justice. Accordingly, the remaining grounds will be dismissed because they were waived.

### D. Competence of Counsel

Even if Garrett had not waived his right to bring this petition, his remaining grounds lack merit. Garrett argues that he suffered from ineffective assistance of counsel. He notes that his attorney "file[d] continuances before and After Indictment without defendants permission numerous times then Requested a withdrawal . . . ." [Docket Item 1 at 40.] He also argued that if the results of a latent fingerprint exam on the weapon had been "known at the time of Initial Hearing . . ., A different tactic by Evidence would have been Sought (1) A different Plea Agreement (2) A <u>NON</u> Waiver of the initial Federal Pleminary [sic] Hearing . . . ." [Docket Item 1 at 40 (emphasis in original).] He further explained that "instead of having this Information and Evidence Available at Seven days before – during 2/1/11 Initial Hearing . . . mailed Late and Evidence known Late . . . ." [Docket Item 1 at 41.]

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate both that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the U.S. Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To show deficient performance, petitioner must show that, "in light of all the

17

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. To show prejudice, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Garrett has not shown deficiency. The Speedy Trial Act excludes "[a]ny period of delay resulting from a continuance granted . . . at the request of the defendant or his counsel or at the request of the attorney for the Government . . . ." 18 U.S.C. § 3161(h)(7)(A). There is no requirement that defense counsel must obtain the defendant's consent before requesting a continuance or that defense counsel must obtain and share discovery before an initial appearance.

Even if Garrett had shown deficiency, he certainly has not shown prejudice. He has not offered any arguments or evidence showing that the continuances impacted the results of his criminal case. Furthermore, according to documents Garrett himself submitted, his attorney mailed him a copy of the government's discovery, including the latent fingerprint examination results, before Garrett entered his guilty plea on October 4, 2011. [Docket Item 13 at 10-11.] Garrett cannot assert that the result of the proceeding would have been

different when he pleaded guilty after he had this evidence.
Garrett's ineffective assistance of counsel claim fails.

### E. Essential Elements of the Offense

Garrett argues that the Court erred because, at sentencing,
the Court assumed Garrett had not fired the shots and "[t]he
relation between the firearm and the underlying offense . . . is
an essential element of the crime, and failure to instruct upon
it warrants reversal." [Docket Item 5 at 1.] He also asserts
that there was "Insufficient evidence of an Effect upon
interstate commerce . . . ." [Docket Item 13 at 20.]

These arguments lack merit. Petitioner pled guilty to 18
U.S.C. 922(g)(1), which prohibits a person who has been
convicted of a crime punishable by over one year of imprisonment
from possessing a firearm in or affecting interstate commerce.
Possession, not use, is the act prohibited by the statute and,
therefore, as this Court acknowledged at sentencing, whether
Petitioner actually fired the weapon is not relevant to his
conviction. Furthermore, Petitioner has not disputed the ATF
report finding that the firearm was manufactured in
Massachusetts. The fact that the weapon was manufactured in a
different state is sufficient to establish an effect on
interstate commerce. See Barrett v. United States, 423 U.S. 212,
225 (1976) (Chapter 18 § 922(h) "covers the intrastate receipt .
. . of a firearm that previously had moved in interstate

commerce" even if the interstate transport was independent of the defendant's actions). Each element of 18 U.S.C. § 922(g)(1) was established to support Garrett's conviction.

### F. Non-Cognizable Arguments

Aside from having waived the right to file this § 2255 petition, as discussed above, Garrett's arguments regarding speedy trial violations, unlawfully obtained evidence, and racial profiling are not cognizable on collateral review because they do not present exceptional circumstances or fundamental defects.

"A section 2255 petition is not a substitute for an appeal." Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1074 (3d Cir. 1985). The statute only remedies jurisdictional or constitutional errors, "fundamental defect[s] which inherently result[] in a complete miscarriage of justice," "omission[s] inconsistent with the rudimentary demands of fair procedure," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Hill v. United States, 368 U.S. 424, 428 (1962). Furthermore, the Supreme Court has noted the significance of "foreclosing collateral relief" in guilty-plea cases where errors are not "of the character or magnitude cognizable under a writ of habeas corpus" because "the concern with finality served by the limitation on collateral attack has special force with respect

to convictions based on guilty pleas." <u>United States v.</u>
<u>Timmreck</u>, 441 U.S. 780, 783-84 (1979). Garrett's arguments about
the Speedy Trial Act, unlawfully obtained evidence and racial
profiling are not of the character or magnitude cognizable on
collateral attack.

### G. Downward Departure

Again, Garrett waived his right to assert in this § 2255
petition that the Court erred at sentencing in declining to
depart downward on account of his mental health issues. Garrett
was sentenced at the bottom of the guidelines range, but he
asserts that he was entitled to a downward departure due to his
history of bipolar disorder and anxiety.

"[T]he court shall impose a sentence of the kind, and
within the range, [of the guidelines] unless the court finds
that there exists an aggravating or mitigating circumstance of a
kind, or to a degree, not adequately taken into consideration by
the Sentencing Commission in formulating the guidelines . . . ."
18 U.S.C. § 3553(b)(1). "Mental and emotional conditions may be
relevant in determining whether a departure is warranted, if
such conditions . . . are present to an unusual degree and
distinguish the case from the typical cases covered by the
guidelines." U.S.S.G. § 5H1.3.

The Court properly denied a downward departure and held
that "while Mr. Garrett suffers from a certain degree of mental

21

illness, which is manifested by depression and anxiety and also by mood swings, that these features are not present to such an unusual degree that it would take his case outside of the Guidelines." (Def. Ex. D at 17:24-18:3.) The Court explicitly considered Garrett's history of depression, anxiety and mood swings, and found that despite these problems he "still retains the ability to function in an educational setting, the ability to work, the ability to express himself, and the ability to learn." (Id. at 18:3-6.)

In a related vein, the Court considered and rejected Garrett's motion for downward departure due to diminished mental capacity under U.S.S.G. § 5K2.13, finding that no evidence of any diminished capacity exists, and that it did not contribute to his commission of this crime of being a felon in possession. (Id. at 18:10-18.) His reason for carrying a firearm, despite knowing it was a crime, was not delusional or incoherent; he had a rational belief that he was in danger, having been shot on three prior occasions, and was living in a dangerous neighborhood for which he wanted the protection of a pistol. (Id.) This was certainly a bad choice for him, but not a choice that results from any diminished capacity.

The Court properly denied his downward departure based on mental conditions, and no new evidence exists. His need for

22

supportive mental health treatment was taken into account elsewhere in his sentencing.

**V.    CONCLUSION**

Garrett's petition for habeas relief under 28 U.S.C. § 2255 will be denied because all of his arguments fail. He has not shown that there were any fundamental defects in the criminal proceeding. There will be no evidentiary hearing. The Court will not issue a certificate of appealability. Because Garrett's habeas petition lacks merit, the Court will also deny his motion for summary judgment and his motion to withdraw his guilty plea. An accompanying Order will be entered.

**April 2, 2014**                         **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                         Chief U.S. District Judge